United States Court of Appeals,

Fifth Circuit.

No. 94-20806.

Rosa Ann BARRETT, et al., Plaintiffs-Appellants.

v.

ATLANTIC RICHFIELD COMPANY, et al., Defendants-Appellees.

Sept. 19, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before DUHÉ and DENNIS, Circuit Judges, and DUVAL,[1] District Judge.

DUHÉ, Circuit Judge.

Appellants assert claims for personal injuries and property damage as a result of exposure to chemicals at two superfund sites. The district court struck the testimony of four of Plaintiffs' expert witnesses because Plaintiffs failed to comply with the court's discovery orders, held the testimony of two experts inadmissible under *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and granted Defendant's summary judgment. We affirm.

BACKGROUND

Appellants are part of an original group of Plaintiffs that first filed suit in *Avalos, et al. v. Atlantic Richfield, et al.,* C.A. No. H-89-3487, in 1989, asserting claims for personal injuries and property damage as a result of alleged exposure to chemicals at two federal superfund sites. All Plaintiffs were originally represented by Thomas Pearson. In the Fall of 1991, Mr. Pearson determined that he could no longer represent the *Avalos* Plaintiffs, and Dennis C. Reich was chosen as counsel. However, approximately 300 of the more than 1000 Plaintiffs did not consent to Mr. Reich's representation and became *pro se* litigants. In December of 1992, the Plaintiffs represented by counsel settled their claims.

The district court then severed the *pro se* non-settling Plaintiffs into a separate action, *Rosa Ann Barrett, et al. v. Atlantic Richfield, et al.,* C.A. No. 89-3487-C, and allowed attorneys Samuel

_____

[1]District Judge of the Eastern District of Louisiana, sitting by designation.

E. Jackson, James M. Lemond, and U. Lawrence Bozé to enter appearances on their behalf.[2] These Plaintiffs continued to allege property damage and personal injury claims as a result of their alleged exposure to chemicals at the waste disposal sites.

The district court entered a scheduling order requiring those Plaintiffs represented by Mr. Jackson to identify their experts by April 1, 1993, and those Plaintiffs represented by Mr. Lemond to identify their experts by April 15, 1993.[3] In Agreed Case Management Orders, dated March 1993, the district court ordered that oral depositions of Plaintiffs' expert witnesses be scheduled pursuant to fifteen working days written notice. Plaintiffs subsequently identified their experts, and Defendants noticed the following experts for depositions for April 16, 1993: Dr. Watson, Dr. Connor, Dr. Schroeder, Mr. Cooper, Dr. Glasser and Mr. Stock.[4] These experts failed to appear. Instead, the Jackson and Lemond Plaintiffs filed a belated motion for a protective order on May 4, 1993, stating that their experts should not be deposed because the experts had not yet been able to formulate their opinions.

On June 3, 1993, the district court held a hearing on Plaintiffs' motion and ordered that depositions of Plaintiffs' experts be completed on or before July 30, 1993. At that hearing the court stated:

> If any of these experts—and I want excerpts of the testimony—show that they either have no knowledge, that they have insufficient knowledge, will not appear at trial to testify, or have not had enough time to examine all the documents in this case that they feel they need to form an expert opinion, then those experts will be struck and no additional experts will be permitted on this case.

(Vol. 16, June 3, 1993, Tr. at 31-32). Despite the court's admonition, Plaintiffs failed to comply with the July 30, 1993 deadline. As a result of Plaintiffs' noncompliance, the district court issued an order striking the testimony of four experts. In addition, the court found the testimony of two experts, Dr.

---

[2]On December 18, 1992, the district court admitted Mr. Jackson as counsel for 171 *pro se* Plaintiffs and Mr. Bozé as counsel for four *pro se* Plaintiffs, and on March 16, 1993, the district court entered an order granting Mr. Lemond leave to appear on behalf of 67 of the *pro se* Plaintiffs.

[3]The Plaintiffs represented by Mr. Bozé were not subject to any of these preliminary proceedings.

[4]Plaintiffs later withdrew Mr. Stock as an expert.

Schroeder and Dr. Watson, to be inadmissible under *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The court subsequently granted Defendants' motions for summary judgment, thereby resolving the claims of the Plaintiffs represented by Mr. Jackson and Mr. Lemond. Defendants did not move for summary judgment against the Plaintiffs represented by Mr. Bozé, however, and thus, the district court's order left the claims of those Plaintiffs intact. Although it was not until March 1, 1995 that the district court entered a final order, which disposed of the Bozé Plaintiffs, the Jackson and Lemond Plaintiffs had already filed their notice of appeal on October 19, 1994. Appellants failed to file a new notice of appeal after the district court entered the final order.

## DISCUSSION

A. Appellate Jurisdiction

We must first determine whether this Court may exercise its jurisdiction. Rule 4(a)(1) of the Federal Rules of Appellate Procedure requires an appellant to file its notice of appeal "within 30 days after the date of entry of the judgment or order appealed from." Fed.R.App.P. (4)(a)(1). The Appellants in this case filed their notice of appeal several months before the district court entered its final judgment. Consequently, under Rule 4(a)(1), their notice of appeal was premature.

A premature notice of appeal, however, does not always prevent a court from exercising its jurisdiction. Under Rule 4(a)(2) notice of appeal "filed after the *announcement* of a decision or order but before the *entry* of the judgment or order shall be treated as filed after such entry and on the day thereof." Fed.R.App.P. 4(a)(2) (emphasis added). "The Rule recognizes that, unlike a tardy notice of appeal, certain premature notices do not prejudice the appellee and that the technical defect of prematurity therefore should not be allowed to extinguish an otherwise proper appeal." *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.,* 498 U.S. 269, 273, 111 S.Ct. 648, 651, 112 L.Ed.2d 743 (1991).

In *FirsTier,* the Supreme Court determined the extent to which Rule 4(a)(2) grants appellate jurisdiction despite a premature notice of appeal. The plaintiff in *FirsTier* sued alleging that the defendant breached several insurance contracts. The district court announced from the bench its

intention to grant summary judgment for the defendant, but declined to enter judgment until the defendant submitted proposed findings of facts and conclusions of law. Before the district court entered its final judgment, however, the plaintiff filed a notice of appeal from the summary judgment ruling. The Supreme Court concluded that the premature notice of appeal was nevertheless effective to invoke the jurisdiction of the federal appellate courts. *Id.* at 277, 111 S.Ct. at 653.

> Rule 4(a)(2) permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment *only when a district court announces a decision that would be appealable if immediately followed by the entry of judgment.* In these instances, a litigant's confusion is understandable, and permitting the notice of appeal to become effective when judgment is entered does not catch the appellee by surprise.

*Id.* at 276, 111 S.Ct. at 653 (emphasis added). The bench ruling in *FirsTier* met this criteria because it would have been "final" under 28 U.S.C. § 1291 had the court entered judgment immediately.

Like the notice of appeal in *FirsTier,* the district court's order in this case would have been appealable if immediately followed by the entry of judgment pursuant to Federal Rule of Civil Procedure 54(b). Appellants (the Plaintiffs represented by Mr. Lemond and Mr. Jackson) challenge the district court's order granting summary judgment to the Defendants. Although the summary judgment order did not resolve the claims of the Plaintiffs represented by Mr. Bozé, the order disposed of every claim asserted by Appellants. Thus, immediately after issuing this order, the district court could have entered a final judgment on Appellants' claims pursuant to Rule 54(b), which provides that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Because the district court's order would have been appealable if followed by Rule 54(b) certification and order, Rule 4(a)(2) permits this court to exercise its jurisdiction.[5]

B. Failure to Comply with Scheduling Order

---

[5]This Circuit has adopted a more expansive rule than the one articulated in *FirsTier,* whereby appeals even from clearly interlocutory orders can be deemed effective based on Rule 4(a)(2). *See Alcom Electronic Exchange, Inc. v. Burgess,* 849 F.2d 964, 967 (5th Cir.1988); *Alcorn County, Miss. v. United States Interstate Supplies, Inc.,* 731 F.2d 1160, 1165-66 (5th Cir.1984). Because we find that the district court's ruling in this case satisfies even the more narrow Supreme Court standard, we need not address whether the Fifth Circuit's rule survives *FirsTier.*

In March 1993, the district court entered a scheduling order requiring Plaintiffs to identify their experts by April 1993 and providing for the scheduling of depositions pursuant to fifteen working days written notice. Although Plaintiffs identified their experts, those experts failed to appear at a properly noticed deposition scheduled for April 16, 1993. Instead, Appellants subsequently moved for protective order in May 1993, stating that their experts had not had sufficient time to formulate opinions. On June 3, 1993 the district court held a hearing on Plaintiffs' motion for a protective order and made the following ruling:

> I'm making an order now, and listen carefully, gentlemen, this is the last time you're going to hear me make a discovery order, as far as this matter is concerned. All depositions of the plaintiffs' experts in this case will be taken and completed on or before July 30th, 1993. If any of these experts—and I want excerpts of the testimony—show that they either have no knowledge, that they have insufficient knowledge, will not appear at trial to testify, or have not had enough time to examine all of the documents in this case that they feel they need to form an expert opinion, then those experts will be struck and no additional experts will be permitted in this case.

(Vol. 16, June 3, 1993, Tr. at 31-32).

Pursuant to this order, Defendants attempted to depose each of Plaintiffs' five designated expert witnesses before the July 30, 1993 deadline. On June 15, 1993, Defendants deposed Travis Cooper, an appraiser designated by Plaintiffs as an expert witness to testify concerning the effects of the waste sites on the value of Plaintiffs' properties. Mr. Cooper testified that he had not received addresses or property descriptions of Plaintiffs' properties until just a few days before the deposition, and that he had received only a small number of the expected addresses at that time. He testified that his work would be completed by July 15, 1993, but subsequently failed to meet this deadline. Mr. Cooper's deposition was resumed on July 23, 1993, at which time he indicated that he had no opinions on the effect of the sites on Plaintiffs' properties. Mr. Cooper's report, which purported to create a formula for measuring diminution in value, was not delivered to Defendants until August 26, 1996, nearly a month after the court-imposed deadline.

Dr. Jay Glasser was designated by Plaintiffs as "a biostatistician and epidemiologist [who] will testify as to the Plaintiffs [sic] health conditions, exposure and need for medical care." Although Dr. Glasser was scheduled for three depositions prior to July 30, 1993, he failed to appear at any.

Dr. Thomas Connor was designated by Plaintiffs as a "toxicologist" who "will testify

concerning the chemicals at the waste sites and their particular effects on humans and animals and the plaintiffs [sic] health conditions, exposure and causation." Defendants initially deposed Dr. Connor on May 27, 1993, but at that point, Dr. Connor had not yet decided whether he would participate in the case. Dr. Connor did not appear before the July 30th deadline for a deposition despite repeated efforts by the Defendants to set a mutually agreeable date.

Plaintiffs designated Dr. James Watson as "a licensed physician" who "will testify as to the health conditions and problems caused by the waste sites and to the physical condition of the Plaintiffs and their need for medical care." Defendants deposed Dr. Watson on June 4, 1993, and again on July 22, 1993. At these sessions, Dr. Watson testified that he had examined only seventeen of the approximately two hundred Plaintiffs, and he was apparently unable to form any final opinions prior to the July 30, 1993 deadline. Dr. Watson subsequently failed to appear for a deposition on September 24, 1993. At a later court hearing, Dr. Watson testified that he had still not completed his examinations of all of the Plaintiffs and was not in a position to offer his final opinions in this case.

Because these four experts had not formulated final opinions by the July 30, 1993 deadline, the district court struck their testimony pursuant to Federal Rules of Civil Procedure 16 and 37. Rule 16(b) authorizes federal courts to control and expedite the discovery process through a scheduling order. Fed.R.Civ.P. 16(b). "Consistent with the authority vested in the trial court by rule 16, our court gives the trial court broad discretion to preserve the integrity and purpose of the pretrial order." *Geiserman v. MacDonald,* 893 F.2d 787, 790 (5th Cir.1990) (internal quotation omitted). Moreover, Rule 37(b)(2)(B) authorizes the district court to impose sanctions on a disobedient party by refusing to allow that party to introduce designated matters into evidence. Fed.R.Civ.P. 37(b)(2)(B). When a district court excludes expert testimony as a sanction for a violation of a discovery order, we determine whether the court's action is an abuse of discretion by examining four factors:

(1) the explanation, if any, for the party's failure to comply with the discovery order;

(2) the prejudice to the opposing party of allowing the witnesses to testify;

(3) the possibility of curing such prejudice by granting a continuance; and

(4) the importance of the witnesses' testimony.

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.,* 73 F.3d 546, 572 (5th Cir.1996), *petition for cert. filed,* 64 U.S.L.W. 3780 (May 10, 1996) (No. 95-1831). Upon review of these factors, we now hold that the district court acted within its discretion in issuing its June 1993 scheduling order and in striking Plaintiffs' expert witnesses for failing to comply with that order.

*1. The Plaintiffs' Explanation for Failing to Comply with the Discovery Order*

Plaintiffs have offered no persuasive explanation for their failure to meet the district court's discovery deadline. Indeed, the record suggests that Plaintiffs engaged in dilatory conduct clearly violative of the district court's orders. Plaintiffs originally agreed to case management orders, but then failed to follow them by failing to produce their experts for scheduled depositions. Subsequently, at the June 1993 hearing, the court warned plaintiffs that the failure to have their expert depositions completed by July 30, 1993 would result in the court striking their experts. Despite this strong admonition, none of the experts had completed their review of the information in the case or formulated final opinions by the court's July 30, 1993 deadline.

Plaintiffs argue that their expert witnesses, particularly Mr. Cooper, were simply unable to complete their work within the deadline set by the Court. The failure of Mr. Cooper to complete his work by the court's deadline, however, appears to be due in large part to the failure of counsel to provide Mr. Cooper with the information he needed to complete his analysis in a timely fashion. Although Mr. Cooper was designated as an expert on April 1, 1993, ten weeks elapsed before Mr. Cooper was given the addresses of the properties he needed to appraise. Thus, despite the good intentions of Mr. Cooper, Plaintiffs' counsel contributed to his failure to comply with the court-imposed deadline. Moreover, even if delays beyond the control of counsel hampered Mr. Cooper's project, Appellants have provided no explanation for their failure to file a motion seeking an extension of the district court's deadline until the very day the depositions were required to be completed.

The failure of Appellants' medical expert witnesses to comply with the court-imposed deadline is also unjustifiable. Dr. Glasser and Dr. Connor never even appeared for depositions before the deadline, resulting in several certificates of non-appearance. In addition, Dr. Watson examined only

seventeen Plaintiffs before the deadline, despite making a commitment to complete at least seventy examinations by that time. Again, Appellants never gave the district court any advance warnings of these problems nor do they now offer a plausible explanation for noncompliance.

*2. The Prejudice to Defendants*

The district court properly determined that Defendants "would be materially prejudiced if the plaintiffs were permitted to perpetually delay the deposition of these experts." Indeed, as noted previously, the failure to meet the July 30, 1993 deadline was not the first time Plaintiffs' experts had failed to fulfill their discovery obligations. There can be no question that each delay in producing and deposing expert witnesses resulted in additional expense and disrupted the Defendants' preparation of the case.

*3. The Possibility of a Continuance*

Although the district court might have ordered a continuance in order to cure any prejudice to the Defendants, it is worth noting that Appellants never requested a continuance from the court. Moreover, Appellants have offered no reason to believe a continuance would have cured their dilatory behavior. Instead, it is likely that a continuance would have resulted only in additional delay and would have unnecessarily increased the expense of defending the lawsuit. As this Court has noted, a continuance does not, in and of itself, "deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Geiserman v. MacDonald,* 893 F.2d 787, 792 (5th Cir.1990).

*4. The Importance of the Excluded Testimony*

Appellants argue that their experts' testimony should not be excluded because of its importance to their case. They emphasize that the exclusion of these witnesses was tantamount to a dismissal of their claims.

We first note that, under Texas law, each Plaintiff could testify at trial as to property value, and that Appellants could have attempted to prove at least some of the personal injury or nuisance claims through other witnesses and medical records. Even granting that the expert testimony was significant "[t]he importance of such proposed testimony cannot singularly override the enforcement

of local rules and scheduling orders." *Id.* Moreover, the claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible.

Thus, although Appellants correctly point out that the exclusion of the experts damaged their case, we find that the district court did not abuse its discretion in striking the testimony. Appellants' repeated dilatory behavior even in the face of explicit warnings and the apparent inability of the experts to produce relevant opinions within the specified time frame renders hollow any claims of unfair prejudice.

C. Expert Testimony Found Inadmissible under *Daubert*

The district court found Dr. Schroeder's proposed testimony to be inadmissible under *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[6] In *Daubert,* the Supreme Court held that the proper admissibility test for scientific evidence is "scientific validity," a standard derived from the text of Federal Rule of Evidence 702. *Id.* at 594, 113 S.Ct. at 2797. Rule 702, which governs the admissibility of expert testimony, sets forth a broad "helpfulness" standard:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Parsing the words "scientific" and "knowledge," the Supreme Court concluded that Rule 702 imposes a "standard of evidentiary reliability" that requires that proposed scientific testimony "be derived by the scientific method" and be "ground[ed] in the methods and procedures of science." *Id.* at 590, 113 S.Ct. at 2795.

In this case, Appellants designated Dr. Schroeder as an expert who would testify concerning a study conducted on cotton rats. This study was intended to demonstrate that mammalian species at the sites, specifically the cotton rat, had been affected by possible exposure. The district court

---

[6]The district court also found that Dr. Watson's testimony was inadmissible under *Daubert.* However, because we hold that Dr. Watson's testimony was properly stricken for failure to comply with the court's scheduling order, we need not also address whether his testimony was inadmissible under *Daubert.*

rejected this proposed testimony, however, stating: "An implication that the cotton rat study shows that unidentified chemicals to which the rats were exposed may be capable of causing some effect in humans is merely a hypothesis without valid scientific connection to support it." (R. 210). The court also found that Dr. Schroeder was not qualified to make the necessary correlation between the effects of chemicals on the cotton rat and the possible effect on the Plaintiffs.

We agree with the district court that Dr. Schroeder's proposed testimony concerning the cotton rat study does not satisfy Rule 702's "standard of evidentiary reliability," as interpreted in *Daubert,* because Dr. Schroeder's testimony would consist of "unsupported speculation," *Daubert,* 509 U.S. at 590, 113 S.Ct. at 2795. We need not address the broader question whether the cotton rat study could *ever* provide a basis for proving the effects of exposure in human beings. Instead, we base our decision on the fact that Dr. Schroeder is not qualified to testify concerning the correlation, if any, between chromosomal damage to cotton rats and the alleged exposure in human beings. Dr. Schroeder himself testified that, as an ecologist, his expertise was limited to the behavior patterns of the cotton rats and their interactions with the environment, and that he had played no role in the toxicological analysis of the cotton rats. Thus, Dr. Schroeder lacks the appropriate expertise to offer a credible scientific opinion regarding the source of the chromosomal damage exhibited by the cotton rats. Moreover, Dr. Schroeder acknowledged that he did not have the proper background to offer a determination as to whether or not the Plaintiffs face an increased risk of suffering adverse health effects from exposure to chemicals at the sites. In short, it is clear that Dr. Schroeder's testimony could not establish with any scientific reliability whether there was an exposure parallel between the cotton rats and human beings, and we therefore affirm the district court's decision not to admit the testimony.

D. Summary Judgment

We review a district court's grant of summary judgment *de novo. Armstrong v. City of Dallas,* 997 F.2d 62, 65 (5th Cir.1993). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The pleadings, depositions, admissions, and answers to

interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). To that end we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986).

After striking the experts', the district court properly determined that Appellants failed to provide summary judgment evidence in support of their personal injury and property damage claims. Absent the proposed expert testimony, Appellants have not produced *any* evidence demonstrating a causal link between their alleged damages and the chemicals at the disposal sites. Thus, because we find no abuse of discretion in the court's striking of the expert testimony, and no additional relevant summary judgment evidence, we affirm the court's order granting Defendants' motion for summary judgment as to these claims.

Appellants contend that, even without the stricken expert testimony, their nuisance claims should have survived summary judgment. Texas courts "have defined a [private] nuisance as a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Maranatha Temple, Inc. v. Enterprise Products Co.,* 893 S.W.2d 92, 98-99 (Tex.App.—Houston [1st Dist.] 1994, writ denied). "A public nuisance is maintained by act, or by failure to perform a legal duty, intentionally causing or permitting a condition to exist which injures or endangers the public health, safety or welfare." *LJD Properties, Inc. v. City of Greenville,* 753 S.W.2d 204, 207 (Tex.App.—Dallas 1988, writ denied) (internal quotations omitted).

Although no expert testimony is necessary to establish the elements of a nuisance claim, Appellants failed to introduce any evidence in opposition to the motion for summary judgment that would demonstrate a substantial interference with the use or enjoyment of their property or an injurious effect on the public health, safety or welfare. Although Appellants point to various documents—including published articles and Defendants' interrogatory responses—that described materials found at the sites, such evidence, by itself, is insufficient to establish a claim for a public or private nuisance.

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.